May it please the Court, my name is Bernice Funk. I represent Mr. Daniel Valencia-Alvarez who is here in court today. I would like to reserve two minutes for rebuttal, please. There are two issues before the Court. Number one, the impermissible retroactivity of the Stop Time Rule, Prong B. Could you pull that mic down just a little bit? I'm a little short. Thank you. Okay. The statute is unconstitutional as applied to Mr. Valencia-Alvarez. Secondly, with the second same prosecution, the government is barred by res judicata from removing Petitioner and refusing to hear his facts. Each legal principle independently and both together establish reversible administrative error. There are two possible remedies. One, termination of the proceedings, or two, a remand to the agency to address Petitioner's arguments. Petitioner also advances his two most important facts. On August 6, 2002, the BIA ruled in favor of Petitioner in the record at pages 177 and 187. September 5, 2002, the immigration judge terminated this removal case. In the record at 150 to 163, the judge found that the single offense was neither an aggravated felony nor a drug crime. Let me ask you this. If Morse Federal practice, when they talk about res judicata, the application of res judicata is that there be a final judgment rendered on the merits in a separate action. Do you agree that these are the criteria here? Final judgment on the merits in a separate action? Is that what I understood? Yes. Well, I guess some would say this is a continuation of the same action in this particular case. I am clear about the circuit rule in immigration proceedings on res judicata was established in Ramon Sepulveda in 1984. And when the same parties have litigated the case to a final decision and the facts don't change, the government's proof was adversarial, final, and valid and reached the merits, had the opportunity to reach the merits. As far as the res judicata issue, I think the most on-point case that we've cited is from the District Court of Connecticut, Murray v. You're asking us to apply res judicata to the BIA's August 6, 2002 decision. Is that correct? Is that what you're asking us to apply res judicata to? Well, actually, the immigration judge's determination, September 5, 2002, he terminated the case. And then the government came back with the additional charge. So there is a regulation that says the government may lodge an additional charge, but they don't necessarily have to lodge an additional charge when they had an opportunity to litigate all those facts. Well, how is that a final judgment? How is it a final judgment when the immigration judge terminates the case? If you're saying that they could lodge an additional charge and it's not over at that point, how would it be a final judgment for purposes of applying res judicata? Well, what I was saying is the regulation provides that they can lodge an additional charge, but the common law of res judicata is that in this type of case, it would be prohibited to lodge an additional charge on the same single offense with the same nucleus of operative facts that were already determined by both the BIA and the IJ. Well, a lot of these cases go back and forth. I mean, you sat here as you listened that I think there was an earlier case that had gone back and forth three times or something along those lines. I'm wondering if what you know, I think you're proposing something a little bit different than has ever been done. And so when the case goes back, you're proposing that what they did before was res judicata? Well, all these cases are different for the reasons they go back and forth. And what I'm proposing is that the res judicata law is developed in immigration jurisprudence, and this particular case of Murray v. Ashcroft is exactly the same as Mr. Valencia-Alvarez's case. The drug crimes were not aggravated felonies. They could not be recharged as a drug crime because there was no change in the facts. The same nucleus of operative facts should have been known when the removal charge was brought. All the facts are related in time, origin, and motivation. They have a convenient unit for adjudication, and it conforms to the party's expectations that once this is resolved, it should be done in one adjudication, which, of course, would save Your Honors a bunch of time. But the Second Circuit in the Johnson v. Ashcroft case has also held that the government should not lodge additional charges where the facts have already been litigated. And the Fifth Circuit in Medina v. INS, 1, Fed 3, 312, 1993, few legal doctrines are more intrinsic or necessary than res judicata. A valid and final judgment precludes a second suit by the same parties on the same claim to ensure that the litigation will finally be over. So those are the most recent and dispositive res judicata immigration authorities as far as I've been able to find. Well, I guess you also claim that your client was eligible for cancellation of a removal because he had more than seven years' continuous presence when the notice of appearance was issued. Is that correct? Yes. I see that in your blue brief. But I'm questioning that under because, I don't know, everyone says it's IRA, IRA, ARERA, or whatever. With its disqualifying provisions that became effective on April 1st of 1997, at what time did your client, at that time he had not been in the United States for seven years, right? Well, the continuous presence necessary to make an application for cancellation or removal commences at the time of any lawful admission and ends when the charging document is filed. And our argument about the stop time rule goes in when the offense occurs, even though the notice to appear may come later. Isn't that correct? This is the argument before the Court. Pardon me? This is the argument before the Court today. What is the permissible retroactivity of prong B? If the statute is disjunctive and under B, it's either under A, it's from the time the notice to appear is given, or, and then under B it says, from the date of the conviction. And here the date of conviction preceded the seven years. Well, okay, ERA-ERA went into effect April 1, 1997. Here we are nine years later arguing about the permissible retroactivity of only prong B, the commission of the offense. And I submit that too broad a brush has been struck here. Congress had three opportunities to make that commission of offense language retroactive and did not. The best discussion of this is found in the district court opinion of Judge Chin in the Henry v. Ashcroft case, 175 fed sup, 2nd, 688. And there he goes very specifically through all the language. And there is no explicit retroactivity of the prong B. Now, counsel has cited the ---- Are we even into retroactivity? I mean, ERA-ERA was enacted. The offense was committed. Then the seven years expires. But there's nothing retroactive. ERA-ERA was in effect before the offense was committed. The offense was committed before the seven years had expired. Where do you get retroactivity? A point of correction, Your Honor. The offense happened December 9, 1996. The guilty plea was May of 1997. It doesn't matter when he pleaded guilty, does it? It's when the offense occurred. I was just saying he's not eligible for 212C relief because it was after the effective date of the statute. However, the seven years' continuous presence began at his time of lawful admission, July of 1991, and ended with the serving of the charging document in September of 1998. So he had the seven years of continuous presence with the permissible retroactive application of prong A. Now, the government has never argued anything about prong B until the citation of the authority of the Peralta case. So I would like to discuss why I think the Peralta case — You're at one minute. Do you want to take that for rebuttal? Yes, I will. Thank you. Okay, thanks. Tell me if I need to change the microphone around. May it please the Court, my name is Cindy Farrier, and I'm representing the Attorney General in this matter. Good morning. Good morning. The first issues, or the issues as pointed out by counsel, are whether the stop-time rule, that is, the commission of a particular offense, cuts off the continuous physical presence and whether it can be applied retroactively. As pointed out by Judge Thompson, the — there isn't a true issue of retroactivity here in the sense that the plea to — or the conviction here wasn't entered until after the enactment of ARERA, which has been the traditional analysis as to whether there's retroactive application, whether a person has a true belief that they're eligible for discretionary relief. Here, though, the time is cut off with the commission of the offense. So I believe that's why Petitioner is focusing on that particular time. However, under the case law of this particular circuit and of other circuits and the should apply, even to crimes that were committed prior to the enactment of ARERA. First of all, the Court's decision in RAM shows that the stop-time rule, and it defines the stop-time rule merely as paragraph 1. And paragraph 1 is broken down then into A and B. It is discussing specifically the A portion, which is the service of the notice to appear rather than the commission of the offense. But it does discuss broadly, and it finds that the language is clear enough that it applies to actions — or it applies retroactively. Then the Court's decision in Mendiola, which was 28J — well, it wasn't 28J, but it's referenced in a 28J case, then comes along and says paragraph 2, which encompasses a different stop-time rule or a cutting-off-of-presence rule, the 90 v. 1. The 90- and 180-day break rule also applies retroactively to breaks in presence that occurred prior to the enactment of ARERA. Then the last case, which was recently 28J and which occurred after the briefing in this case, is the Garcia-Ramirez case, which finds that even in cases that are governed by the permanent rules, so it's not clear that the Court should even look to the stop-time rules, even in those cases, paragraph 2, which is the 90- and 180-day break rule, applies to breaks that occurred prior to the enactment of ARERA. So if you take those cases along with the First Circuit's decision, which, again, has been decided since the briefing in this case, which holds that the stop-time or that the commission of a certain offense would cut off time retroactively, taking all of those cases together, and the Third Circuit's assumption that that also applies, the Court is bound to conclude that, in fact, the stop-time rule should apply in this particular case. The case 28J by Petitioners' Counsel, Lopez-Castellanos, is a case that's been not applicable in this particular situation. There, the Court was considering, first of all, the decision with regard to retroactive application and reasonable expectations, et cetera. That was all victa. And secondly, that was in the context of whether a person's commission of an aggravated felony would actually knock out a person from being eligible for cancellation. So that was a different criteria. It's not the application of the stop-time rule, the commission of the offense. So those are all distinguishable. Or that, in particular, is a distinguishable case. And under, again, under the case law of this Court, the commission of the offense should cut off the time. What, in your brief, you agree that the doctrine of res judicata applies to administrative proceedings, correct? We agree that under the case law of this circuit, yes, it does apply. What is the relationship between res judicata and 8 CFR Section 1003.30, which allows the filing of additional charges? What's the relationship of those two? If I'm understanding your question correctly, our argument is that if there's a the final decision has been rendered on a particular issue, applying the res judicata doctrine would mean that that would be something that we shouldn't be able to litigate again. In this particular case, the – there was no final decision. There is a – So the fact that – because you can still amend, and are you saying that's why it's not final? Yes. So that is the relationship that you're saying that 1003.30 means it's not a final judgment? In this particular case, there may be instances, I suppose, where there is a final judgment and new facts arise later, maybe about a new conviction or something else, where INS may – or DHS may choose to bring new proceedings. And that's a different situation than this in particular. But this case in particular, there was – we were still litigating the first proceeding. There was never a final judgment. The judge's termination of proceedings was then immediately appealed by DHS, so certainly that could never be expected to have been a final order in this case. The Ninth Circuit's decision in Ramon Sepulveda relied upon by Petitioner, in fact, was a decision where an immigration judge had terminated proceedings and the order was essentially final, and then a motion to reopen came years later and the immigration judge reopened proceedings. The case was then appealed to the board and then appealed to this Court, and this Court said, hey, you can't use particular documents that you're relying on. This case is done. Then it went back – or then INS lodged or started new proceedings relying, again, on the same conviction – or the same documents that were used before. So there, there was a clear expectation that the proceedings based upon that particular document were finished. So this is quite different in the sense that there were no – there was no final judgment and it was always being litigated until the final order by the board affirming the IJ's decision. So the other decisions also cited by Petitioner are distinguishable in that same way. There was not a final order. So that is why we're saying that the regulations in this particular instance allow for DHS to lodge additional charges and that because the order was not final, that was why they were able to do so. And I guess I'd just like to make the final point that in considering the application of the stop-time rule, that being the commission of a particular offense, there really isn't any expectation – or I'm not sure what expectation to discretionary relief Petitioner's counsel refers to. She concedes that she wouldn't – her client would not have been eligible for a 212C relief at the time that he pled guilty to his crime. Suspension of deportation, you would have – he would have had to have accrued 10 years from the date of his crime. So 1990 – well, actually 1996 or 1997. I'm not sure which date it would go from. But there – you know, that cannot form an expectation of any sort of relief, because once the stop – or once the charging document was filed, then that cuts off the time there. So there really wasn't any – there isn't a retroactive application even if you were to proceed and find that the rules are not clear, the language is not clear in the particular statute. So that's my information. Are there any questions? There don't appear to be further questions. Thank you for your argument. Thank you. The relief eligibility is cancellation of removal for a lawful permanent resident. And I submit that there is no case law in this circuit about the retroactivity of prong B. The cases cited by the government, Ram, Mendiola, Garcia-Ramirez, and, again, the Okigi case of the Third Circuit that's noted in Peralta are cases that talk about the second – or third subsection of this statute, the 90-100-day departure – 180-day departure breaking continuous presence. There is nothing about – there is no circuit decision except the Peralta case. And I would like to explain why, with all due respect, this is wrongly decided, result-oriented, and poorly researched. They talk about the Okigi case, but actually it does not support their decision and, in fact, supports Mr. Valencia-Alvarez's relief. So there is a true issue – To wrap up your time, basically. There is a true issue here. The explicit retroactivity and the Supreme Court decision in Inez v. St. Cyr tells us we have to be careful about this statutory language. Thank you. Thank you both for your argument. This matter will now stand submitted. The Court's going to just take a brief five-minute recess, and then we'll resume with the next case on calendar.
judges: Thompson, Tashima, Callahan